UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 25 CR 51 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| **)** | |
| EDWARD MARTINEZ-CERMENO, ) | Magistrate Judge Gabriel A. Fuentes |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

As it is "emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), the undersigned magistrate judge takes this opportunity to explain the Court's January 28, 2025, decision releasing Defendant Edward Martinez-Cermeno ("Defendant") under a release order without holding the hearing sought by the government under 18 U.S.C. § 3142(f)(2)(A) as a "serious risk of flight." The matter of release or detention of Defendant before trial is within the under the original jurisdiction conferred on the magistrate judge by the U.S. Congress under 28 U.S.C. § 636(a)(2). On January 28, the Court held a detention hearing after Defendant's January 26 arrest in this district under a criminal complaint issued in the Western District of Texas alleging a misdemeanor charge of entering the United States unlawfully in violation of 8 U.S.C. § 1325(a)(1). At the hearing, the government moved for detention, but under the Bail Reform Act, no defendant may be detained without a hearing, and Congress has prescribed specifically seven circumstances under which a hearing may be held. *See* 18 U.S.C. §§ 3142(f)(1)(A-E)), 3142(f)(2)(A-B). The ground under which the government sought the detention hearing was that Defendant posed a

1

"serious risk of flight," per Section 3142(f)(2)(A). The Court denied the government's motion to detain Defendant because the government failed to meet its "preponderance of the evidence burden," on its motion, of establishing that this case "involves a serious risk that such person will flee."

First, as a general matter, under the law applicable to this case on a motion for pre-trial detention, the U.S. Supreme Court has instructed that "[i]n our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The applicable federal statute governing pre-trial detention or release is the Bail Reform Act ("the Act"). 18 U.S.C. § 3142, et seq. The Act allows a defendant to be detained in custody pending trial "[i]f, *after a hearing pursuant to the provisions of subsection (f) of this section*, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1) (emphasis added). In other words, the Act bars the judicial officer from holding anyone in pre-trial criminal detention without a detention hearing held as prescribed in Section 3142(f). *Id.*

Second, the U.S. Congress, in the Act, did not provide that Courts always must conduct detention hearings whenever the government requests one. Rather, the Congress enumerated specifically the circumstances under which the detention hearing may take place. The first five circumstances stem from the nature of the charged offense, but none of those circumstances apply here, because entering the country unlawfully in violation of 8 U.S.C. § 1325(a)(1) is not among the types of offenses listed in Section 3142(f)(1)(A-E)

2

of the Act. Here, the nature of the charge against Defendant left the government with only two possible avenues to a detention hearing, namely, that the case "involve[d]" either a "serious risk that the such person [the Defendant] will flee," under Section 3142(f)(2)(A), or a serious risk that the Defendant will obstruct justice or threaten, injure, or intimidate a prospective witness or juror (or attempt to do so), under Section 3142(f)(2)(B). Congress, in enacting the Act, did not create other options. It did not leave the Court or the government with discretion to hold detention hearings in any other circumstances. Again, the government sought a detention hearing for Defendant under Section 3142(f)(2)(A). As a result, it was the government's burden to establish by a preponderance of the evidence that the case does involve a serious risk that Defendant will flee; the later determination of whether Defendant should be detained under the Act is a separate step that is not reached if no hearing can be held. *United States v. White*, 3:21-mj-4970, 2021 WL 2155441, at *4 (M.D. Tenn. May 27, 2021). If a court finds that the government does not meet the Act's threshold condition that a detention hearing may be held, a defendant cannot be detained. *Id.*

Section 3142(f)(2)(A) does not define "serious" in this context. In recent years, federal courts have had increasing opportunity to consider and apply this section to arguments in criminal cases – and in the immigration context – that the cases of various defendants did or did not involve serious flight risk of flight, for purposes of determining whether a detention hearing must be held. For example, in *United States v. Figueroa - Alvarez*, 681 F. Supp. 3d 1131 (D. Idaho 2023), currently a leading case, the court described "serious" risk of flight under Section 3142(f)(1)(A) as "a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to

3

avoid court proceedings or supervision." *Id.* at 1138; *see also United States v. Erazo-Calix*, No. 1:24-cr-00150-AKB, 2024 WL 4505038, at *3-4 (D. Idaho. Oct. 16. 2024) (rejecting government's argument to overrule *Figueroa-Alvarez*); *United States v. Romero-Martinez*, No. 3:23-CR-176 (JAM), 2024 WL 965150, at *4 (D. Conn. Mar. 6, 2024) (applying *Figueroa-Alvarez* definition of "serious risk of flight" and finding that even a defendant's repeated illegal re-entries into the country did not establish serious risk of flight but rather showed defendant's "primary motive" to stay in the United States "where he is subject to prosecution"). As the government agreed at the hearing in this case, the government has the burden of establishing that the case involves a serious risk of flight, and that burden is by a preponderance of the evidence. *See White*, 2021 WL 2155441, at *3.

The risk referenced in Section 3142(f)(2)(A), by the way, is not that defendants will not appear in their criminal cases *involuntarily* upon being taken into civil immigration custody for removal from the United States, but that they will *voluntarily flee*. As courts recently have observed, the risk of "nonappearance" is different from the risk of "flee[ing]" under the Act. *White*, 2021 WL 2155441, at *10. Flight from a court's jurisdiction involves a volitional act, so as a result, the fact that a defendant is a removable immigrant subject to deportation or removal does not categorically result in pre-trial detention in a criminal case under the Act. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017); *United States v. Marinez-Patino*, No. 11 CR 064, 2011 WL 902466, at *1 (N.D. Ill. Mar. 14, 2011). The idea that a person lacking immigration status in the country automatically will or must be detained under the Act lacks support in the law. Accordingly, Defendant's immigration status and removability has some bearing on assessing the

4

person's community ties under the Act, *United States v. Odeyale*, No. 24-4042, 2024 WL 2747542, at *4 (10th Cir. May 29, 2024), but it does not mandate detention.

Getting back then to the question of the government's motion for a detention hearing on January 28 in this case, the circumstances here are as follows:

- The government charged Defendant with Section 1325(a)(1) of Title 8, and as a first offense, making this a misdemeanor case in which the maximum term of imprisonment is six months, and in which probation would be an option;

- In fact, the government confirmed at the hearing that the charge is a petty offense;

- Defendant proffered that he has an April 2026 appointment for processing of his asylum application, which may or may not be denied or approved, but he does have an appointment along with temporary protected status, meaning he has some stake in being in the country and trying to complete his application successfully so that he may stay in the country;

- Nothing was proffered about how a misdemeanor or petty offense conviction might affect his chances on his asylum application, but in any event, persons charged with crimes are presumed innocent until proven guilty, in a long legal tradition as old as the country itself;

- Defendant proffered some community ties, namely that he has been living with his girlfriend, an elementary school teacher, in suburban Schaumburg, where he lives with her and her parents. Her father owns a construction company in the Chicago area; moreover, the government did not proffer any facts to indicate that Defendant possessed the means to flee to his native Venezuela;

- Pretrial Services checked his criminal record and found no criminal convictions and one arrest, failure to appear, and warrant from Cook County stemming from a single felony theft charge from January and February of 2024, and the only information the government had on that case is that Defendant did not appear on or about January 26, 2024, that a warrant was issued on February 23, 2024, and that the case remains pending;

- The government proffered that on or around the time of his arrest in this case, defendant was questioned about a September 2024 murder in Chicago, but the government stopped short of calling him a target or suspect in that investigation, calling him only a "subject."

Of the above factual circumstances, the most concerning is the Cook County failure to appear from a year ago. But that is one single failure to appear. The Court would have

5

given it greater weight if the charge underlying this prosecution had been more serious or carried a greater penalty. Section 1325(a) allows for a felony charge upon a subsequent unlawful entry, but that was not charged. Section 1326 allows felony prosecutions of persons who re-enter the country without the express written consent of the Attorney General or the Secretary of Homeland Security, after a prior deportation, but that was not charged. What was charged was a petty offense. The probationable petty offense charge in this case does not come anywhere close to establishing a serious flight risk in this case and works against that proposition, particularly not if they offer unrebutted evidence that they have a place to stay in the United States and persons who support them. At least in this case, under the individualized circumstances and a context in which the law requires an individualized determination by the Court under the applicable provisions of the Act as interpreted by federal courts, the Court could not find that the government met its burden of establishing that the case involves a serious risk of flight under Section 3142(f)(2)(A). The Court therefore denied the government's motion – by following the law.

      Finally, the Court also had to note on the record at the hearing that the law does not permit civil immigration "detainer" requests to prolong the pre-trial criminal custody or detention of defendants who are ordered release under judicial release orders under the Act. The Court needed to mention this subject because the existence of such a detainer request was mentioned by the government, which also represented that it may delay Defendant's release in this case. With the greatest respect, that supposition is founded in an inaccurate understanding of the law. As this Court has explained in great detail, citing substantial federal statutory and case law addressing the intersection between civil immigration enforcement and federal pretrial detention under the criminal law, criminal detention of a

person may not be prolonged as a result of an ICE civil immigration administrative law detainer. *See United States v. Valdez-Hurtado*, 638 F. Supp. 879, 888-97 (N.D. Ill. 2022) (citing cases). The Court has no reason to believe that Defendant's criminal pre-trial custody in this case was so prolonged, and circumstances of Defendant's administrative detention, if any, after release from criminal pre-trial detention were not and are not before the Court.

**SO ORDERED.**

                              **ENTER:**

                              _____
                              **GABRIEL A. FUENTES**
                              **U.S. Magistrate Judge**

**Dated: January 29, 2025**